An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LLEWELL A. GRIFFO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64155

**FILED**

SEP 03 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a judgment of conviction pursuant to a jury verdict of battery constituting domestic violence with the use of a deadly weapon resulting in substantial bodily harm, carrying a concealed weapon, and discharging a firearm in a structure. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

This matter arose from the shooting of Kendra Ransom, who the State alleged was in a dating relationship with appellant Lewell Griffo, and which was witnessed by Tatiana Richardson. While we conclude the majority of Griffo's claims do not warrant reversal, we do, however, reverse the conviction of discharging a firearm in a structure due to insufficient evidence.

### Griffo waived his challenges to the indictment

"[O]bjections based on defects in the institution of the prosecution" or the charging instrument "may be raised only by motion before trial." NRS 174.105(1). Failing to raise such objections prior to trial "constitutes a waiver thereof." NRS 174.105(2).

First, Griffo argues the indictment must be dismissed because the State vindictively added charges. Griffo filed a pretrial motion to dismiss the indictment on grounds of pre-indictment delay and constitutional speedy trial violations, but not prosecutorial vindictiveness.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-26825

Although Griffo alleged the State unconstitutionally delayed seeking the indictment to penalize him for raising competency concerns, he did not claim the State added charges for vindictive reasons. Nor did Griffo's motion cite authority relevant to vindictive prosecution. We therefore conclude Griffo waived his vindictive prosecution claim. *See* NRS 174.105(2). Regardless, the record on appeal is insufficient for us to review this claim. *See Wilkins v. State*, 96 Nev. 367, 372, 609 P.2d 309, 312 (1980) (stating this court will not review unpreserved constitutional errors if the record is insufficient "to provide an adequate basis for review"); *see also United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) ("[V]indictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right.").

Second, Griffo contends NRS 178.562(1) requires dismissing the indictment because the State violated NRS 178.556(1) and 174.085(7). We previously rejected the same argument under NRS 174.085(7). *See Thompson v. State*, 125 Nev. 807, 811-13, 221 P.3d 708, 711-12 (2009). Moreover, Griffo waived these "objections based on defects in the institution of the prosecution" by failing to raise them prior to trial. NRS 174.105(1)-(2). Like his other challenges to the indictment, Griffo waived this argument by failing to raise it prior to trial. *See* NRS 174.105(2).

*The district court properly exercised subject matter jurisdiction over the aggravated domestic battery charge*

Griffo claims the district court lacked subject matter jurisdiction over the aggravated domestic battery charge because the prosecutor interfered with the grand jury's deliberations and the grand jury only voted to indict Griffo for misdemeanor domestic battery.

Contrary to Griffo's assertions, the record clearly reflects that only the grand jurors were present during deliberations and voting. *See*

NRS 172.235(2) (stating only grand "jurors may be present while the grand jury is deliberating or voting"). After deliberations and voting, the prosecutor returned to the room, asked whether the grand jury found the aggravated domestic battery as alleged in the proposed indictment, and sought "to clarify" the foreperson's statements. In addition, the foreperson instructed the prosecutor to prepare an indictment to match the proposed indictment, which alleged the aggravated domestic battery, indicating that the grand jury voted to indict Griffo for the aggravated domestic battery. Given that no grand jurors disputed that they voted to indict Griffo for the aggravated domestic battery, we have no reason to doubt the foreperson's statement that he merely "misread" the proposed indictment when telling the prosecutor that the grand jury found probable cause supporting the charges. We therefore conclude the record does not support Griffo's assertions that the prosecutor interfered with the grand jury or the grand jury only voted to indict Griffo for a misdemeanor battery.[1]

As a result, the district court properly exercised subject matter jurisdiction over the aggravated domestic battery charge. *See* NRS 4.370(3) (stating that justice courts have jurisdiction over misdemeanors).

*The district court did not abuse its discretion in its evidentiary rulings*

Griffo contends the district court abused its discretion in several evidentiary rulings. First, Griffo argues the district court

---

[1]Griffo's reliance on *State v. Eckel*, 60 A.3d 834 (N.J. Super. Ct. Law Div. 2013), is misplaced. In *Eckel*, the court held that dismissing the indictment was warranted where the prosecutor improperly attempted "to influence the grand jury in its findings" by telling the jurors about the defendant's criminal history and opining that the defendant was guilty. *Id.* at 841. Here, the prosecutor simply sought to clarify the grand jury's findings and did not comment on the evidence or opine on Griffo's guilt. *Eckel* is therefore inapposite.

improperly admitted evidence that he called and threatened Richardson after the shooting. Evidence of other acts is admissible if it is relevant for a proper non-propensity purpose, "is proven by clear and convincing evidence, and" its probative value "is not substantially outweighed by the danger of unfair prejudice," and a district court's decision to admit such evidence will not be overturned absent an abuse of discretion. *Bigpond v. State*, 128 Nev., Adv. Op. 10, 270 P.3d 1244, 1250 (2012). Griffo argues the threatening phone call was not proven by clear and convincing evidence and the danger of unfair prejudice substantially outweighed the probative value of the evidence.

At the evidentiary hearing, Ransom testified she was certain Griffo was the caller because she had spoken with Griffo on the phone 50 or 60 times. Richardson testified Ransom gave her the phone, and the caller asked Richardson why she sent "the police to his house" and told her "if he goes down, it's over with," which Richardson understood as a threat. We cannot conclude this testimony fails to satisfy the clear and convincing evidence standard. *See Bigpond,* 128 Nev., Adv. Op. 10, 270 P.3d at 1250. Moreover, this evidence was highly relevant to Griffo's consciousness of guilt because Griffo knew the police were looking for him and could not be found for nearly two months. In addition, Griffo's statement could be interpreted as a threat, but, as Griffo himself argues, the statement could also be interpreted as merely expressing displeasure at having the police interested in his whereabouts, thus decreasing any potential prejudice. Therefore, we conclude the district court did not abuse its discretion by finding the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See id.*

Despite the district court's proper exercise of discretion in analyzing the *Bigpond* factors, we conclude the district court erred by

admitting evidence of the phone call because the State failed to file its motion to admit this evidence in a timely fashion. *See* EDCR 3.20(a); EDCR 3.28; *Hernandez v. State*, 124 Nev. 639, 648-50, 188 P.3d 1126, 1133-34 (2008) (stating a district court should deny untimely motions in limine absent good cause for the delay). This error, however, is harmless. *See Newman v. State*, 129 Nev., Adv. Op. 24, 298 P.3d 1171, 1181 (2013). Griffo received an unfiled copy of the State's motion almost two years before trial, and his counsel could have investigated the phone call despite the State's failure to file the motion. In addition, the evidence of guilt in this case is overwhelming, and we cannot conclude the evidence of the phone call "had a substantial and injurious effect" on the jury's verdict. *Id.* (internal quotation marks omitted).

Griffo further argues the district court abused its discretion by allowing a police officer to testify that he had no reason to doubt Griffo and Ransom were dating. Contrary to Griffo's claim, this was not a legal conclusion. Rather, it was fact-based testimony explaining why the officer did not further investigate Griffo's relationship with Ransom. The district court properly admitted this testimony. *See* NRS 50.025(1)(a).

Griffo next claims the district court abused its discretion by allowing a police officer to testify that people in the neighborhood would probably not cooperate with police due to fear of retaliation. Assuming the district court abused its discretion by admitting this testimony, the only prejudice Griffo alleges is that this testimony was evidence of other bad acts reflecting on Griffo's character. To the contrary, the officer only discussed the general reluctance of potential witnesses to talk to the police and did not mention Griffo. Thus, if there was error, it was harmless. *See Lay v. State*, 110 Nev. 1189, 1193-94, 886 P.2d 448, 450-51 (1994) (holding

harmless any error in admitting evidence of "the general reluctance of witnesses to testify").

*Nevada's statutory definition of "dating relationship" is not unconstitutionally vague*

"'[D]ating relationship' means frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement. The term does not include a casual relationship or an ordinary association between persons in a business or social context." NRS 33.018(2). Griffo contends this definition is unconstitutionally vague. We disagree.

Griffo first argues NRS 33.018(2) is vague because its individual words are vague, but he fails to account for the meaning of the words in the context of the entire statute. Because "words are known by—acquire meaning from—the company they keep," *Ford v. State*, 127 Nev., Adv. Op. 55, 262 P.3d 1123, 1132 n.8 (2011), this argument lacks merit.

Griffo further contends NRS 33.018(2) is unconstitutionally vague because other jurisdictions have defined "dating relationship" differently. The decisions made in other jurisdictions are irrelevant to whether the definition enacted by our Legislature (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *State v. Castaneda*, 126 Nev., Adv. Op. 45, 245 P.3d 550, 553 (2010). (quoting *Holder v. Humanitarian Law Project*, 561 U.S. ___, ___, 130 S. Ct. 2705, 2718 (2010)). Accordingly, this argument has no merit.

Next, Griffo claims NRS 33.018(2) is unconstitutionally vague because it lacks an intent element. Griffo cites no authority for this proposition and fails to recognize that absent a dating relationship, battery itself is a crime that requires intent. NRS 200.481(1)(a); *see also*

*Sheriff, Washoe Cnty. v. Burdg*, 118 Nev. 853, 857, 59 P.3d 484, 487 (2002) (stating a criminal statute may be unconstitutionally vague where it "contains no intent element" and "imposes criminal sanctions on what is otherwise non-criminal activity"). We therefore reject this argument.

Finally, Griffo contends NRS 33.018(2) might be broad enough to include young children within its sweep. Assuming this to be true, this example does not render NRS 33.018(2) unconstitutional because a statute need only be clear "in *most* applications" to withstand scrutiny. *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 513, 217 P.3d 546, 554 (2009) (emphasis added).

Griffo has failed to overcome the presumption that NRS 33.018(2) is constitutional.[2] *See id.* at 509, 217 P.3d at 551.

*Substantial evidence supports the convictions of aggravated domestic battery and carrying a concealed weapon, but does not support the conviction of discharging a firearm in a structure in a designated populated area*

Griffo next argues the State failed to present sufficient evidence to support his convictions. We will not reverse a conviction that is supported by substantial evidence. *Thompson*, 125 Nev. at 816, 221 P.3d at 715.

We reject Griffo's claim that the State presented insufficient evidence Griffo was in a dating relationship with Ransom. Ransom testified she and Griffo spoke on the phone and exchanged text messages daily for several weeks and saw each other seven times in the three weeks preceding the shooting. Ransom further testified she and Griffo talked about their relationship, "were boyfriend and girlfriend," held hands,

[2]As a result, we also reject Griffo's argument that the district court abused its discretion by providing the jury the statutory definition of "dating relationship."

kissed, and tried to engage in sexual activities. Thus, the State presented substantial evidence that Griffo's relationship with Ransom involved "frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement." NRS 33.018(2); *see also Thompson*, 125 Nev. at 816, 221 P.3d at 715. Moreover, although this relationship was brief, Ransom's testimony was sufficient to support finding the relationship neither casual nor platonic. *See* NRS 33.018(2).

We also conclude the State presented sufficient evidence Griffo intended to shoot Ransom. Ransom testified that after Richardson separated Ransom from Griffo, Griffo pulled out the gun, pointed it at her, and pulled the trigger. Despite Griffo's subsequently looking confused and putting the gun to his head, this evidence was sufficient to prove Griffo intentionally shot Ransom. *See Thompson*, 125 Nev. at 816, 221 P.3d at 715; *see also* NRS 193.200 ("Intention is manifested by the circumstances connected with the perpetration of the offense . . . .").

We similarly reject Griffo's argument the State presented insufficient evidence that Griffo concealed the gun on his person. Both Ransom and Richardson testified they did not see the gun, and Ransom testified she could not see where the gun came from but saw Griffo pull the gun out. This evidence was more than sufficient for the jury to conclude the gun was not "discernible by ordinary observation." NRS 202.350(8)(a); *see also Thompson*, 125 Nev. at 816, 221 P.3d at 715.

We conclude, however, the State presented insufficient evidence to support Griffo's conviction of discharging a firearm in a structure in a designated populated area. NRS 202.287(1)(b) prohibits discharging a firearm in a structure "within an area designated by city or county ordinance as a populated area for the purpose of prohibiting the discharge of weapons." Although evidence of the apartment's address and

occupied status was admitted, no evidence indicating an ordinance designated the area as populated was offered, admitted, or judicially noticed. Therefore, the evidence was insufficient to support Griffo's conviction of discharging a firearm in a structure in a designated populated area, and we reverse Griffo's conviction of this offense.[3]

*The district court properly instructed the jury*

Last, Griffo contends the district court improperly instructed the jury. We disagree.

Griffo argues the district court abused its discretion by refusing to include misdemeanor battery on the verdict form. Griffo claims he was entitled to this lesser-included-offense alternative because some evidence suggested he pushed Ransom. Griffo was accused only of shooting Ransom, not pushing her, so the jury could not properly find Griffo guilty of any battery for pushing Ransom. *See Alford v. State*, 111 Nev. 1409, 1415, 906 P.2d 714, 718 (1995) (noting due process requires a defendant "receive adequate notice of the charges" against him). Griffo further argues the district court should have included misdemeanor battery on the verdict form because some evidence suggested Griffo shot Ransom accidentally. "'Battery' means any *willful* and unlawful use of force or violence upon the person of another," NRS 200.481(1)(a) (emphasis added), and a person cannot be guilty of a crime if he committed the act "through misfortune or by accident," NRS 194.010(6). Thus, the jury could not convict Griffo of any form of battery for the shooting if it found he shot Ransom accidentally. *See id.*; NRS 200.481(1)(a). As a result, the district court properly refused to include misdemeanor battery on the verdict form.

---

[3]Given this conclusion, we need not consider Griffo's other arguments regarding this offense. *See Hollis v. State*, 96 Nev. 207, 210, 606 P.2d 534, 536 (1980).

*See Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008) (reviewing "de novo whether a particular [jury] instruction . . . comprises a correct statement of the law").

In addition, Griffo contends the district court gave confusing instructions on dating and domestic relationships. Because Griffo failed to object to these instructions, we review for plain error. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). The district court gave the jury the statutory definition of "dating relationship" and instructed that a domestic battery "occurs when an individual commits a battery upon his spouse, former spouse . . . , [or] a person with who[m] he has had or is having a dating relationship." The district court then instructed the jury to "determine whether a 'domestic relationship' existed between" Griffo and Ransom. Griffo contends these instructions were confusing because some used the phrase "dating relationship" and others used "domestic relationship." Although consistently using "dating relationship" throughout the jury instructions may have been clearer, "domestic relationship" obviously referred to the list of relationships that support a domestic battery conviction, and its use did not affect Griffo's substantial rights. Accordingly, any error was harmless and Griffo is not entitled to relief. *See Green*, 119 Nev. at 545, 80 P.3d at 95.

Griffo next contends the district court committed plain error by failing to instruct the jury on the statutory definition of "concealed." *See* NRS 202.350(8)(a). Because NRS 202.350(8)(a) uses "concealed" in its "commonly understood" and "ordinary sense," "no further defining instructions" were necessary. *Dawes v. State*, 110 Nev. 1141, 1146, 881 P.2d 670, 673 (1994). Regardless, Griffo fails to demonstrate any impact on his substantial rights, and thus any error was harmless. *See Green*, 119 Nev. at 545, 80 P.3d at 95.

In addition, Griffo argues the district court erred by replacing "a person" in NRS 202.350(1) with "[e]very person," thereby eliminating from the jury's consideration the possibility that any exceptions existed. "[A] person" does not indicate the existence of any exceptions. Therefore, using "[e]very person" did not limit the applicability of any exceptions, and any error was harmless. *See Green*, 119 Nev. at 545, 80 P.3d at 95.

Finally, Griffo claims the district court erred by instructing the jury it could consider evidence of flight as evidence of Griffo's consciousness of guilt. A police officer testified he contacted Griffo's parents and associates and visited five different residences at which Griffo might have been staying, but could not find Griffo for approximately two months. Combined with the evidence of the phone call, this evidence suggested Griffo knew the police were looking for him and avoided his parents, friends, and the places he normally stayed. Therefore, the district court did not commit any error, let alone plain error, by instructing the jury on flight. *See Potter v. State*, 96 Nev. 875, 876, 619 P.2d 1222, 1222 (1980) ("[Flight] embodies the idea of going away with a consciousness of guilt and for the purpose of avoiding arrest."); *see also Green*, 119 Nev. at 545, 80 P.3d at 95. We also decline Griffo's invitation to conclude that flight instructions improperly comment on evidence.[4] *Cf. Renner v. State*, 397 S.E.2d 683, 685-86 (Ga. 1990) (holding that flight instructions constitute improper comments on evidence).

---

[4]Given the overwhelming evidence of Griffo's guilt, we conclude cumulative error does not warrant reversal of the remaining convictions. *See Valdez v. State*, 124 Nev. 1172, 1195-96, 196 P.3d 465, 481 (2008).

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. James M. Bixler, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth Judicial District Court Clerk