# IN THE SUPREME COURT OF THE STATE OF NEVADA

THOMAS RICHARDSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77176

FILED

FEB 24 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying appellant Thomas Richardson's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Richardson and his girlfriend's 18-year-old son, Robert Dehnart, robbed and beat to death Steve Folker and Estelle Feldman at Feldman's home in Las Vegas. They had agreed to murder the victims in a scheme to rob Folker. A jury convicted Richardson of conspiracy to commit murder, two counts of first-degree murder with the use of a deadly weapon, burglary while in possession of a deadly weapon, conspiracy to commit robbery, and robbery with the use of a deadly weapon and sentenced him to death for each murder. Richardson's convictions and sentences were affirmed on appeal. *Richardson v. State*, Docket No. 54951 (Order of Affirmance, November 9, 2012). Richardson filed a timely postconviction petition for a writ of habeas corpus, which the district court denied after conducting an evidentiary hearing. In this appeal, Richardson contends that the district court judge should have been disqualified from the postconviction proceeding and that the district court erred in denying his claims of ineffective assistance of trial and appellate counsel and trial error. We affirm.

21-05391

*Disqualification*

Richardson argues that the chief judge erred in denying his motion to disqualify Judge Leavitt. He argues that he demonstrated bias and the chief judge applied the incorrect standard in evaluating his claim of bias.

Judges have a "duty to preside . . . in the absence of some statute, rule of court, ethical standard, or other compelling reason to the contrary." *Goldman v. Bryan*, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988) (internal quotation marks omitted), *disavowed on other grounds by Halverson v. Hardcastle*, 123 Nev. 245, 266, 163 P.3d 428, 443 (2007). "A judge is presumed to be impartial, and the party asserting the challenge carries the burden of establishing sufficient factual grounds warranting disqualification." *Rippo v. State*, 113 Nev. 1239, 1248, 946 P.2d 1017, 1023 (1997). Under Nevada law, a judge must be disqualified whenever her "impartiality might reasonably be questioned," NCJC Rule 2.11(A), which presents an objective inquiry: "whether a reasonable person, knowing all the facts, would harbor reasonable doubts about [the judge's] impartiality," *Ybarra v. State*, 127 Nev. 47, 51, 247 P.3d 269, 272 (2011) (quoting *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 431, 438, 894 P.2d 337, 341 (1995)). Additionally, the Fourteenth Amendment's Due Process Clause requires disqualification "when, objectively speaking, 'the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

The chief basis for Richardson's allegation of bias was an adverse ruling during his trial that this court concluded was erroneous when presented with the issue on direct appeal. A judge's errors during the course of a trial, however, are not evidence of personal bias warranting

 

disqualification. *See In re Petition to Recall Dunleavy*, 104 Nev. 784, 789, 769 P.2d 1271, 1275 (1988) ("[R]ulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for disqualification."). *See generally* Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* 1047-60 (3d ed. 2017) (discussing general agreement that a judge's erroneous rulings do not provide grounds for seeking to disqualify that judge absent evidence that the errors were attributable to judicial bias). Accordingly, the fact that this court concluded on direct appeal that Judge Leavitt abused her discretion with respect to one ruling at trial is not sufficient to show bias or an appearance of bias. Similarly, Judge Leavitt's alleged errors in other cases are insufficient to show bias or an appearance of bias. Accordingly, Richardson did not carry his burden of demonstrating that disqualification was warranted based on any erroneous rulings Judge Leavitt made during the course of his trial or any other judicial proceeding.

The second basis for Richardson's disqualification motion was Judge Leavitt's alleged bias against his postconviction counsel based on events related to counsel's representation of the defendant in another case (*State v. Ross*) where counsel allegedly attacked Judge Leavitt's integrity in his appellate briefing, and the Judicial Discipline Commission's related reprimand of Judge Leavitt. Although Nevada law provides for disqualification where "[t]he judge has a personal bias or prejudice concerning . . . a party's lawyer," NCJC Rule 2.11(A)(1), a judge's bias or animosity toward a party's attorney requires disqualification "only in extreme situations," *Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 649, 940 P.2d 134, 137 (1997). Here, it does not appear that Richardson established bias where Judge Leavitt disavowed any such bias and Richardson does not point to any specific comments or conduct by Judge

Leavitt that show such ill will toward Richardson's postconviction counsel that Judge Leavitt's impartiality could be reasonably questioned. *See Sonner*, 112 Nev. 1328, 1335, 930 P.2d 707, 712 (1996) ("[T]his court has always accorded substantial weight to a judge's determination that he can fairly and impartially preside over a case"). And the simple fact that counsel successfully argued on appeal in another case that Judge Leavitt erred would not lead an objectively reasonable person to harbor doubt about Judge Leavitt's impartiality or present a situation where the probability of actual bias on the judge's part is too high to be constitutionally tolerable. A conclusion otherwise would undermine the general rule observed above that a judge's erroneous rulings do not provide grounds for disqualification. Similarly, the mere fact that Judge Leavitt's conduct in another proceeding resulted in a disciplinary reprimand also does not create an intolerably high probability of actual bias in this case nor would it lead an objectively reasonable person to harbor doubt about Judge Leavitt's impartiality. For these reasons, we conclude that the chief judge did not err in denying the motion to disqualify Judge Leavitt from the postconviction proceedings.

*Ineffective assistance of counsel*

Richardson contends that the district court erred in denying his claims that trial and appellate counsel provided ineffective assistance. Under the two-part test in *Strickland v. Washington*, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) prejudice. 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 998, 923 P.2d 1102, 1107, 1114 (1996) (applying *Strickland* to appellate-counsel claims). For purposes of the deficiency prong, counsel is strongly presumed to have provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *Strickland*, 466 U.S. at 690; *Ennis v. State*, 122 Nev. 694, 704-

05, 137 P.3d 1095, 1102 (2006). For purposes of the prejudice prong with respect to appellate counsel, a petitioner must demonstrate that any issues omitted by appellate counsel would have had a reasonable probability of success on appeal. *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114. The petitioner bears the burden of proving the facts underlying his postconviction claims by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). A court need not consider both prongs of the *Strickland* test if a petitioner makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697.

An evidentiary hearing is only required if the claims are supported by specific factual allegations that are not belied by the record and, if true, would have entitled the petitioner to relief. *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). "A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001), but the district court's purely factual findings are entitled to deference, *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004).

*Failure to challenge delay in appointing counsel*

The State of Nevada filed a criminal complaint against Richardson while he was in jail in California on unrelated charges. Nevada counsel was not appointed until Richardson appeared in a Nevada court over one year later. Richardson argues that trial counsel should have challenged the delay in appointing counsel because it violated his fundamental rights.[1]

---

[1]Richardson principally asserts this issue as a claim of trial error. As such, it could have been raised on direct appeal. Richardson has not alleged good cause to overcome the procedural default under NRS 34.810(1)(b)(2).

We conclude that Richardson has not demonstrated deficient performance or prejudice. The Sixth Amendment right to counsel is triggered at the outset of judicial proceedings, *Dewey v. State*, 123 Nev. 483, 488, 169 P.3d 1149, 1152 (2007), and requires the assistance of counsel at all critical stages of the proceedings, *Brinkley v. State*, 101 Nev. 676, 678, 708 P.2d 1026, 1028 (1985). Even if the filing of the criminal complaint started judicial proceedings in Nevada, it was not itself a critical stage that warranted the presence of counsel. *See Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008) (recognizing that commencement of prosecution has been tied to "formal charge, preliminary hearing, indictment, information, or arraignment" (quotation marks omitted)); *McCarty v. State*, 132 Nev. 218, 223, 371 P.3d 1002, 1005 (2016) (concluding that right to counsel attaches when defendant is brought before judicial officer where he is informed of charges against him and his rights). Richardson does not allege that he was compelled to participate without counsel during any interrogation or adversarial proceeding after the complaint was filed. *See United States v. Gouveia*, 467 U.S. 180, 190 (1984) (recognizing that right to counsel protects "accused during trial-type confrontations with the prosecutor"). Instead, Richardson was represented by counsel when he ultimately appeared before a judicial officer in Nevada. As Richardson has not demonstrated that the failure to appoint counsel earlier amounted to a Sixth Amendment violation, he did not demonstrate that trial counsel should have raised an objection or that an objection would have had merit or somehow affected the outcome at trial. Therefore, the district court did not err in denying this claim.

---

To the extent that Richardson sufficiently asserts a related claim of ineffective assistance of counsel, we address this issue in that context.

*Failure to effectively litigate challenge to evidence found at the crime scene*

Richardson contends that trial counsel did not effectively litigate his objection to testimony about the "Autoclub 500" hat that was found at the crime scene and used as evidence that he was at the scene of the killings. At trial, Richardson argued that the police acted in bad faith by not collecting the hat when they saw it at the crime scene. That argument was unsuccessful, and he now asserts that counsel should have made better arguments to demonstrate inadequacies in the police investigation and that the hat was material.

Richardson failed to demonstrate deficient performance or prejudice. He still has not demonstrated that the officers understood the hat's significance when they saw it at the scene—i.e., that it might have belonged to a suspect—such that further investigation or efforts to impeach the law enforcement witnesses would have bolstered the defense motion regarding the officers' failure to collect the hat. *See Kirksey*, 112 Nev. at 990, 923 P.2d at 1109 (recognizing that to prove ineffective assistance of counsel a petitioner must show the motion would have been meritorious and that there was a reasonable probability of a different outcome at trial if the evidence had been excluded). First, it does not appear that further investigation to determine when officers saw surveillance video of appellant wearing a hat would have bolstered the defense motion at trial. In particular, testimony established that the logo was obscured on the hat that appellant was seen wearing in a Taco Bell surveillance video such that officers could not identify the hat from the video as the same hat photographed at the crime scene. Second, it does not appear that the detectives viewed the crime scene photographs before visiting the Riverside home where they saw a picture of Richardson wearing a similar hat. Although defense counsel's examination of Detective Vacarro at a pretrial

hearing suggested the detective viewed the crime scene photographs in September, evidence logs show they were developed in October and no actual testimony supports the assertion that detectives viewed them before going to the Riverside home.[2] Third, Richardson did not allege what manner of technology the police department could have used to enhance the photographs or demonstrate that it was possible to do so. Fourth, the record of the pretrial hearing shows that counsel explored whether the detectives sought to obtain any photographs taken by the company that cleaned the crime scene and learned that detectives did not seek those photographs, the cleaning company did not retain the photographs for more than a year, and the photographs taken by the cleaning company were unlikely to be more comprehensive than those taken by investigators. Finally, Richardson's argument that counsel should have asserted that access to the hat itself would be the only way to confirm that it was the same hat in the Riverside photograph is subject to the same infirmities as the arguments advanced in prior proceedings. The contention that the hat found at the crime scene might not be identical to the hat shown in the Riverside photo is still "merely a hoped-for conclusion." *Sheriff, Clark Cty. v. Warner*, 112 Nev. 1234, 1240, 926 P.2d 775, 778 (1996).

Richardson has not identified any evidence or proffered any argument that trial or appellate counsel could have offered that had a reasonable probability of convincing the trial court or this court that the hat was material when the detectives handled it at the scene.[3] *See Daniels v.*

---

[2]The hat appears in photographs taken on September 14, 2005, by Crime Scene Analyst Marnie Carter. The record indicates that these photographs were taken with a film camera.

[3]Richardson also contends that counsel should have challenged the detectives' narrative of how they observed the hat in a photograph at his

SUPREME COURT
OF
NEVADA

(O) 1947A

*State*, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998) (recognizing that the failure to gather evidence only amounts to a due process violation where the evidence is material and the failure to gather evidence was the result of gross negligence or bad faith). Therefore, the district court did not err in denying this claim.

*Failure to effectively challenge admission of hammer and related evidence*

Richardson argues that trial and appellate counsel did not adequately object to or impeach evidence about a hammer and sales record introduced at trial. Based on Dehnart's testimony about purchasing the hammer used in the crime, the State introduced a sales record from Home Depot and a hammer with the same UPC code as indicated on the record. The court admitted the sales record, and the defense did not object. Counsel did object, however, to the admission of the hammer. The trial court overruled that objection, and that ruling was subsequently affirmed. *Richardson*, Docket No. 54951, Order of Affirmance at 7. Richardson asserts that counsel should have challenged the admission of the hammer and sales record based on the failure to notice the witness and relevance.

Richardson did not demonstrate that trial counsel acted unreasonably in not more aggressively challenging the admission of the hammer as there was a strategic reason for not doing so and that decision

---

home and should have investigated whether they actually returned to the crime scene after viewing that photograph. These arguments lack merit because he does not point to any evidence that counsel failed to uncover that would undermine the testimony. *See Hargrove*, 100 Nev. at 502, 686 P.2d at 225. Richardson also does not provide cogent argument or relevant authority as to how counsel should have impeached testimony about detectives returning to the crime scene. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (holding that it is appellant's responsibility to provide cogent argument).

"is virtually unchallengeable absent extraordinary circumstances." *Lara*, 120 Nev. at 180, 87 P.3d at 530 (internal quotation marks omitted). Although the hammer incidentally bolstered Dehnart's testimony, it did not implicate Richardson any further as a participant in the crime than any other evidence consistent with Dehnart's testimony. The hammer did not corroborate Dehnart's testimony any more than the surveillance video showing Folker, Dehnart, and Richardson together; the medical examiner's testimony that the injuries were caused by a hammer; the description of the hammer strikes; and testimony about Richardson throwing away new work boots. Instead, the sales record put the murder weapon in Dehnart's hand. This was consistent with Richardson's theory of defense—that Dehnart acted on his own. Therefore, the district court did not err in concluding that trial counsel did not perform deficiently with respect to this evidence.

Even assuming counsel should have further challenged the evidence, Richardson did not demonstrate that had trial counsel objected to the testimony on the basis that the witness was not noticed, there is a reasonable probability that the result of the trial would have been different. The failure to notice a witness does not necessarily require the exclusion of the witness's testimony. *See Burnside v. State*, 131 Nev. 371, 384, 352 P.3d 627, 637 (2015); *see also* NRS 174.234(1)(a)(2) (requiring the State to serve and file notice of witnesses at least five judicial days before trial). The court would have only been required to prohibit T. Trenholm's testimony if it concluded that the failure to provide notice was the result of bad faith. NRS 174.234(3)(a). Trial counsel were not aware of any circumstances that would show bad faith, and Richardson has not alleged any circumstances of which counsel should have been aware. Notably, the State did not need to corroborate Dehnart's testimony until he pleaded guilty and agreed to testify less than a month before Richardson's trial. Thereafter, detectives

SUPREME COURT
OF
NEVADA

(O) 1947A

10

attempted to recover the actual murder weapon based on Dehnart's proffer and when unsuccessful in that endeavor, had to deduce the location of the store Dehnart visited based on other evidence. Thus, Richardson did not demonstrate a motion to exclude the evidence based on the failure to notice would have been successful. And even if the evidence had been excluded, Richardson did not demonstrate a reasonable probability that the result of the trial would have been different because the hammer was not the only evidence corroborating Dehnart's testimony or showing that Richardson was involved in killing the victims with a hammer. Therefore, the district court did not err in denying this claim.

Richardson further argues that trial counsel should have objected to the introduction of the hammer and sales record on the basis that they were irrelevant and improperly corroborated Dehnart's testimony. We disagree. A relevance objection to the hammer would have been futile because the hammer, introduced as a replica weapon, was relevant to demonstrate the manner in which the victims died. *See* NRS 48.015 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."); *Richardson*, Docket No. 54951, Order of Affirmance at 7. And even if an objection would have been successful, there is no reasonable probability it would have affected the outcome at trial. Although the hammer may have corroborated Dehnart's testimony, other testimony and evidence provided more compelling corroboration, including the medical examiner's testimony about the injuries, observations of hammer strikes at the scene, the surveillance video showing Folker with Richardson and Dehnart, evidence that Richardson had discarded new boots, and Richardson's bank deposit on his return. *See Cheatham v. State*, 104 Nev. 500, 504-05, 761 P.2d 419,

SUPREME COURT
OF
NEVADA

(O) 1947A

11

422 (1988) (recognizing that corroborating evidence need not be sufficient to establish guilt and may be taken from the evidence as a whole). Also, contrary to Richardson's assertion, some evidence connects the sales record to Dehnart. The record memorializing the purchase of a single hammer was from the store generally identified by Dehnart and the time printed on the record is consistent with the testimony and the Taco Bell video. Considering this evidence, Richardson did not demonstrate a reasonable probability of a different result at the suppression hearing or trial had counsel challenged the introduction of this evidence in the manner he now asserts. Nor did he demonstrate appellate counsel was ineffective in this regard. Therefore, the district court did not err in denying these claims.

*Failure to introduce character evidence relating to Dehnart*

Richardson argues that trial counsel should have introduced evidence that Dehnart had threatened another individual with a hammer or shown that Dehnart resorted to threats with a hammer as a matter of habit.

Richardson did not demonstrate deficient performance. Dehnart's prior violent conduct was not admissible to prove that he acted in conformity therewith at the time of the murders. NRS 48.045(2); *see Mortensen v. State*, 115 Nev. 273, 281, 986 P.2d 1105, 1110 (1999). Richardson's argument that the evidence was admissible under the identity exception to the general rule excluding prior bad act evidence is without merit for two reasons. First, Dehnart's identity as the perpetrator was not an issue in this case because he admitted his involvement and his fingerprint was found at the scene. *See Rosky v. State*, 121 Nev. 184, 197, 111 P.3d 690, 698 (2005) (recognizing that evidence of a signature crime may be admissible where identification of the perpetrator has not been made). Second, a single prior incident in which Dehnart threatened another

SUPREME COURT
OF
NEVADA

(O) 1947A

person with a hammer is insufficient to establish a "signature crime." *See Mortensen*, 115 Nev. at 279-80, 986 P.2d at 1109-10 (concluding that two incidents of "hot-headed, impulsive and brutish behavior" were not sufficiently similar to charged shooting to introduce as modus operandi evidence). Contrary to Richardson's arguments, a hammer is not a "unique weapon" that makes the prior incident sufficiently similar to the charged homicides. *See, e.g., Conner v. State*, 130 Nev. 457, 461, 327 P.3d 503, 506 (2014) (noting injuries consistent with hammer on victim's body); *Archanian v. State*, 122 Nev. 1019, 1032, 145 P.3d 1008, 1018 (2006) (noting hammer used in double homicide); *Calambro v. State*, 114 Nev. 106, 111, 952 P.2d 946, 949 (1998) (describing victim beat to death with a hammer); *Smith v. State*, 110 Nev. 1094, 1097-98, 881 P.2d 649, 651 (1994) (noting hammer used in triple homicide); *Beets v. State*, 107 Nev. 957, 959-60, 821 P.2d 1044, 1046-47 (1991) (noting hammer used in homicide and other crimes).

Counsel also cannot be faulted for neglecting to argue that the prior bad act evidence was admissible as habit evidence. Evidence of a person's habit may be relevant to prove he acted in conformity therewith, NRS 48.059(1), but only with a foundation establishing "that specific, recurring stimuli have produced the same specific response often and invariably enough to qualify as habit or routine," *Thomas v. Hardwick*, 126 Nev. 142, 151, 231 P.3d 1111, 1117 (2010). Thus, the single prior incident at issue is insufficient to lay a proper foundation for the introduction of the act as evidence of habit. *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 511 (4th Cir. 1977) (requiring that habit evidence demonstrate systematic conduct in response to a repeated specific situation). Therefore, the district court did not err in denying this claim.

*Failure to introduce character evidence related to Folker*

In his direct appeal, Richardson argued that the district court erred in excluding testimony about Folker's erratic behavior and financial condition. We concluded that the evidence was properly excluded because Dehnart did not allege self-defense and Richardson's defense was that he was not in the mobile home during the attack. *Richardson*, Docket No. 54951, Order of Affirmance at 9-10. Richardson argues that appellate counsel failed to frame the argument properly to show that the evidence was admissible as evidence supporting self-defense or evidence of habit.

Richardson did not demonstrate deficient performance or prejudice. A defendant may "present evidence of a victim's character when it tends to prove that the victim was the likely aggressor." *Daniel v. State*, 119 Nev. 498, 514, 78 P.3d 890, 901 (2003). When self-defense is at issue, "evidence of specific acts showing that the victim was a violent person is admissible if [the] defendant . . . *was aware of those acts*." *Id.* at 515, 78 P.3d at 902. But here, the record does not indicate that Richardson knew Folker or that he (or Dehnart, who worked for Folker) was aware of any prior acts showing Folker was a violent person. The record also does not indicate that Folker's alleged prior acts, in which Folker harassed his former realtor and responded angrily to a newspaper staff member who would not allow him to place an ad disparaging his realtor, tend to prove that Folker was a violent person. *See Burgeon v. State*, 102 Nev. 43, 45-46, 714 P.2d 576, 578 (1986) (permitting admission of "specific acts which show that the deceased was a violent and dangerous person" provided the accused knew of those acts). Additionally, these two incidents were insufficient to establish that Folker had a habit of aggressive behavior. *See Wilson*, 561 F.2d at 511. And even if trial counsel could have introduced this testimony, Richardson did not demonstrate that he could have successfully argued self-

SUPREME COURT
OF
NEVADA

(O) 1947A

defense given the murder of Feldman. Therefore, the district court did not err in denying this claim.

*Failure to challenge aggravating circumstance*

Richardson argues that trial counsel should have impeached penalty phase testimony supporting the aggravating circumstance based on his prior conviction for sexual assault. In particular, he points to inconsistencies between the sexual assault victim's testimony during the court-martial proceeding that resulted in the prior conviction and her testimony during the penalty phase.

We conclude that Richardson did not show deficient performance. At the penalty hearing, the victim testified about a sexual assault Richardson committed over 17 years before. Given the passage of time, inconsistences were to be expected. Nevertheless, the accounts were largely consistent and Richardson did not demonstrate that any inconsistencies were so serious as to affect the outcome of the penalty hearing. And because the State met its burden of proof solely by introducing the prior convictions, no amount of cross-examination with the sexual assault victim's prior inconsistent testimony would have had a reasonable probability of changing the jury's finding of the aggravating circumstance. Even if counsel had successfully impeached the victim's testimony that Richardson later threatened her, it would have only given a slightly less egregious impression of his actions. And additional cross-examination would have resulted in the jury spending more time hearing from a credible, sympathetic witness. *See Silva v. Woodford*, 279 F.3d 825, 852 (9th Cir. 2002) (recognizing that limited cross-examination may be reasonable where more extensive examination could have rendered a witness more sympathetic). Therefore, the district court did not err in denying this claim.

*Failure to challenge victim impact testimony*

Richardson argues that counsel did not effectively challenge the prior sexual assault victim's penalty hearing testimony about the traumatizing effect the assault had on her and her son. He also argues that counsel should have requested a curative instruction.

Richardson failed to demonstrate deficient performance. Trial counsel did object to the testimony. On appeal, we recognized that the testimony was not permissible victim impact evidence and therefore the district court abused its discretion in allowing the testimony, but we concluded that the error did not have a substantial or injurious effect on the verdict given the brevity of the improper testimony. *Richardson*, Docket No. 54951, Order of Affirmance at 13. Considering the trial court's ruling on the objection, we cannot fault counsel for not then requesting a curative instruction. Beyond that circumstance, counsel's failure to seek a curative instruction also was not objectively unreasonable as an instruction could have drawn unnecessary attention to otherwise brief testimony and garnered more sympathy for the witness. *See Musladin v. Lamarque*, 555 F.3d 830, 845-46 (9th Cir. 2009) (holding that the decision not to request a limiting instruction on damaging evidence may be a strategic tactic to avoid drawing further attention to damaging testimony). Richardson also cannot demonstrate a reasonable probability of a different outcome given the brevity of the improper testimony and the other compelling evidence presented at the penalty hearing. *See Doyle v. State*, 116 Nev. 148, 160, 995 P.2d 465, 472 (2000) (recognizing that postconviction petitioner must also show that the result of the trial would probably have been different had counsel successfully challenged inadmissible evidence). Therefore, Richardson failed to demonstrate that the district court erred in denying this claim.

*Failure to challenge juror misconduct*

Richardson argues that trial counsel should have addressed juror misconduct by requesting dismissal of the juror and a curative instruction.

We conclude that Richardson did not demonstrate deficient performance or prejudice. During penalty phase testimony, a juror was apparently moved with sympathy toward a prior victim based entirely on that victim's penalty hearing testimony. The district court questioned the juror and he averred that he could be fair and impartial. Given this record, Richardson did not demonstrate that trial counsel failed to lodge a meritorious objection to the alleged misconduct. *See Meyer v. State*, 119 Nev. 554, 564, 80 P.3d 447, 455 (2003) ("Prejudice is shown whenever there is a reasonable probability or likelihood that the juror misconduct affected the verdict."); *Hernandez v. State*, 118 Nev. 513, 522, 50 P.3d 1100, 1107 (2002) (recognizing that jury's expression of sympathy toward victim does not necessarily prejudice defendant). He further does not state what instruction counsel should have requested that would have had the desired effect of both alleviating the juror's reaction and not calling more attention to it. Therefore, the district court did not err in denying this claim.

*Cumulative error*

Richardson argues that the district court erred in denying his claim that the cumulative effect of counsel's errors warrants relief. Assuming that multiple deficiencies in counsel's performance can be considered cumulatively for purposes of the prejudice prong of *Strickland* when the individual deficiencies did not result in prejudice, *see McConnell v. State*, 125 Nev. 243, 259 n.17, 212 P.3d 307, 318 n.17 (2009) (assuming, without deciding, that multiple deficiencies may be cumulated for *Strickland*'s prejudice prong), Richardson failed to demonstrate any

instances of deficient performance. Thus, there is nothing to cumulate. Accordingly, the district court did not err in denying this claim.

*Postconviction expert assistance*

Richardson contends that the district court abused its discretion in denying his request for funding to retain a crime scene reconstruction expert, a photograph expert to enhance the crime scene photograph depicting the hat, and a forensic tool mark expert to evaluate the victims' wounds in comparison to the purported murder weapon. We discern no abuse of discretion. *State v. Second Judicial Dist. Court*, 85 Nev. 241, 245, 453 P.2d 421, 423-24 (1969) (reviewing decisions regarding funding defense experts for abuse of discretion).

Richardson offers no argument in support of his contention that the district court should have provided funding for a crime scene reconstruction expert, so we do not address that argument. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6 (recognizing that appellant must provide relevant authority and cogent argument). Although he offers brief arguments asserting the district court erred in denying his request for funding to hire a photographic expert and a forensic tool mark expert, those arguments lack merit. While postconviction counsel represented that he consulted with a photographic expert, he did not identify the expert or provide any further detail on what technology the expert would have used to clarify or enhance the photograph. Based on those omissions, the district court did not abuse its discretion in declining to authorize funds to hire that expert. *See Hargrove*, 100 Nev. at 502, 686 P.2d at 225. With respect to the tool mark expert, we conclude that the district court did not abuse its discretion. Both the medical examiner and an expert consulted by trial counsel concurred that the hammer could have caused the victims' injuries and therefore Richardson cannot demonstrate ineffective assistance based

on counsel's failure to search for another expert who might provide a different opinion. *See Sonner v. State*, 112 Nev. 1328, 1340, 930 P.2d 707, 715 (1996) ("[T]he law does not require an unlimited expenditure of resources in an effort to find professional support for [a petitioner's] theory."); *Dees v. Caspiri*, 904 F.2d 452, 454 (8th Cir. 1990) (observing that counsel does not have a duty to "continue looking for experts just because the one he has consulted gave an unfavorable opinion"). Accordingly, the district court did not abuse its discretion in denying postconviction fees to retain another expert to support that claim.

Having concluded that Richardson's contentions do not warrant relief, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.          _____, J.
Parraguirre                              Stiglich

_____, J.          _____, J.
Cadish                                   Silver

_____, J.          _____, J.
Pickering                                Herndon

cc:    Hon. Michelle Leavitt, District Judge
       The Law Office of Kristina Wildeveld & Associates
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

